

**SO ORDERED.**

**SIGNED this 30 day of July, 2009.**

_____
**A. Thomas Small
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION**

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **HARRELSON UTILITIES, INC.** | **09-02815-8-ATS** |
| **DEBTOR** | |

**ORDER DETERMINING THAT THE AUTOMATIC STAY WAS VIOLATED,
DENYING REQUEST FOR SANCTIONS, AND
DISMISSING MOTIONS FOR RELIEF FROM AUTOMATIC STAY**

There are several related matters before the court, including (1) the motions filed by the chapter 11 debtor in possession, Harrelson Utilities, Inc., for sanctions against Ferguson Enterprises, Inc., and Smith Setzer & Sons, Inc. for violating the automatic stay by filing notices claiming statutory labor and materialmen's liens; and, (2) the motions of Ferguson, Smith Setzer, S.T. Wooten Corporation and Tindall Corporation for relief from the automatic stay to file notices of and to enforce their statutory liens for labor and materials.  A hearing was held on July 2, 2009, at which the court considered these motions as well as similar motions for relief from the automatic stay involving the same issues in the chapter 7 case of Mammoth Grading, Inc., Case. No. 09-01286-8-ATS.

The facts are not disputed.  Harrelson is a utilities contractor that filed a petition for relief under chapter 11 on April 6, 2009, and is operating as a debtor in possession.  Ferguson, Smith

Setzer, S.T. Wooten and Tindall are unpaid subcontractors that did work for Harrelson on various projects. On most of the projects Harrelson was the contractor and the lien claimants were the debtor's "first tier" subcontractors. At times, Harrelson was a first tier subcontractor and the lien claimants were Harrelson's "second tier" subcontractors.[1]

Harrelson contends that Ferguson and Smith Setzer violated the automatic stay provided by § 362(a)(4) by filing postpetition notices pursuant to North Carolina General Statutes § 44A-19, claiming statutory labor and materialmen's liens under § 44A-18 against funds due to Harrelson, and by filing notices pursuant to § 44A-12 claiming, by subrogation under § 44A-23(a) and (b), Harrelson's labor and materialman's liens against real property on which Harrelson and the subcontractors did work. The subcontractors maintain that they did not violate the automatic stay because the notices they gave were permitted by § 362(b)(3), which provides an exception to § 362(a)(4). If the court determines that the stay does apply to the notices, Ferguson, Setzer Smith,

---

[1] Ferguson acted as a first or second tier subcontractor on five projects, and contends it is owed $450,000. Ferguson served notices of claims of liens on funds due Harrelson and filed, by subrogation to Harrelson's lien rights, claims of liens on real property on April 21, April 23, and April 27, 2009. Ferguson seeks relief from the automatic stay to enforce the liens on real property pursuant to North Carolina law. Smith Setzer acted as a first or second tier subcontractor on five projects, and contends it is owed approximately $112,332.52. Smith Setzer served notices of claims of liens on funds due Harrelson and filed, by subrogation to Harrelson's lien rights, claims of liens on real property on May 19, 2009; it seeks relief from the automatic stay to enforce the liens on real property. Tindall acted as a second tier subcontractor for the improvement of two parcels of property, and contends it is owed $20,995.03. Tindall served a notice of claim of lien on funds due Harrelson on May 19, 2009, and filed, by subrogation to Harrelson's lien rights, a claim of lien on real property on May 26, 2009. It seeks relief from the automatic stay to enforce its lien on real property. S.T. Wooten acted as a first or second tier subcontractor on five projects, and contends it is owed $11,804.88. S.T. Wooten seeks relief from the automatic stay to serve notices of claim of liens on funds due Harrelson and to file, by subrogation to Harrelson's lien rights, and enforce claims of liens on real property.

S.T. Wooten, and Tindall ask for relief from the automatic stay to file the notices and to enforce their liens.

The resolution of the important and complex issues raised by these motions requires an analysis of both the rights given to laborers and materialmen under North Carolina law and the protections provided by the Bankruptcy Code to the estates of debtors. Whether the § 362(b)(3) exception to the automatic stay applies is a matter of federal bankruptcy law, but that determination depends on a question of North Carolina state law that comes down to when the interests of subcontractors are created in the funds owed to the contractor. If the lien right on funds owed to a contractor of a subcontractor is created *prior* to the giving of the notice of lien, the exception applies, but if the lien right is created *by* the giving of the notice, it does not.

Section 362(a)(4) of the Bankruptcy Code provides that a petition for relief operates as a stay of "any act to create, perfect, or enforce any lien against property of the estate." Funds owed to the debtor pursuant to a construction contract are property of the estate and are protected from "any act to create, perfect, or enforce any lien against property of the estate," unless the act comes within the exception afforded by § 362(b)(3). Section 362(b)(3) provides that a petition does not operate as a stay "of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of" title 11.

Section 546(b) provides

> The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that–
> (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or

3

> (B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

11 U.S.C. § 546(b)(1).

Both § 362(b)(3) and § 546(b) refer to "an interest in property," a phrase that encompasses more than a "lien." See Maryland Nat'l Bank v. Mayor of Baltimore (In re Maryland Glass Corp.), 723 F.2d 1138, 1141-42 (4th Cir. 1983) ("section 546(b) speaks of an 'interest in property' and does not limit its scope to 'liens'").  In determining whether the exception of § 362(b)(3) applies, the court must consider what interest the creditor had in property before the petition was filed and the effect of that interest on a hypothetical purchaser who might have purchased the property before the creditor's "interest was fully perfected and enforceable by virtue of a statutory lien." 723 F.3d at 1142.  Whether the subcontractors had an "interest in property," the perfection of which could be effective against an entity that acquired rights in the property prior to the date of perfection, is an issue to be determined by state law.  Butner v. United States, 440 U.S. 48, 55, 99 S. Ct. 914, 918 (1979).

The North Carolina Constitution, Article X, Section 3, provides that "[t]he General Assembly shall provide by proper legislation for giving to mechanics and laborers an adequate lien on the subject-matter of their labor," and Chapter 44A of the General Statutes provides protection for contractors in the form of liens on the real property for which they provided labor or materials. Protection is provided for subcontractors through the right to claim a lien upon funds owed to the contractor and to assert, through subrogation, the contractor's right to file liens against real property.

Chapter 44A, Article 2, Part 1 sets forth the rights and remedies of general contractors.  "Any person who performs or furnishes labor . . . or furnishes materials . . . pursuant to a contract, either

4

express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this Article, have a right to file a claim of lien on the real property to secure payment of all debts owing for labor done . . . or material furnished . . . pursuant to the contract." N.C. Gen. Stat. § 44A-8.  A claim of lien on real property is perfected upon the filing of the lien within 120 days after the last furnishing of labor or materials, and is enforced by the filing of an action within 180 days after the last furnishing of labor or materials. N.C. Gen. Stat. §§ 44A-12; 44A-13.  The claim of lien relates back to the time of the first furnishing of labor or materials by the person claiming the lien. N.C. Gen. Stat. § 44A-10.  A contractor's lien has priority over any liens or encumbrances that arise after the date of the contractor's first furnishing of labor or materials to the site. Frank H. Conner Co. v. Spanish Inns Charlotte, Ltd., 294 N.C. 661, 242 S.E.2d 785 (1978).

Chapter 44A, Article 2, Part 2 provides for two lien rights for subcontractors: (1) a claim of lien upon funds owed to the contractor, and (2) the right to assert, by subrogation, the lien rights of the contractor against the real property owned by the party for whom the contract is being performed.  A first tier subcontractor may claim a lien on the funds owed to the contractor and may also, by subrogation, assert the contractor's lien against the real property.  Section 44A-18(1) provides:

> Upon compliance with this Article:
> (1) A first tier subcontractor who furnished labor, materials, or rental equipment at the site of the improvement shall be entitled to a lien upon funds that are owed to the contractor with whom the first tier subcontractor dealt and that arise out of the improvement on which the first tier subcontractor worked or furnished materials.

Section 44A-23(a) provides, in relevant part, that a "first tier subcontractor, who gives notice of claim of lien upon funds as provided in this Article, may, to the extent of this claim, enforce the

5

claim of lien on real property of the contractor created by Part 1 of this Article." N.C. Gen. Stat. § 44A-23(a).

A second tier subcontractor may claim a lien on the funds owed to the first tier subcontractor and may by subrogation assert the first tier contractor's lien on funds and its subrogation lien rights against real property.

> (2) A second tier contractor who furnished labor, materials, or rental equipment at the site of the improvement shall be entitled to a lien upon funds that are owed to the first tier subcontractor with whom the second tier subcontrator dealt and that arise out
> of the improvement on which the second tier subcontractor worked or furnished materials. A second tier subcontractor, to the extent of the second tier subcontractor's lien provided in this subdivision, shall also be entitled to be subrogated to the lien of
> the first tier subcontractor with whom the second tier contractor dealt provided for in subdivision (1) of this section and shall be entitled to perfect it by notice of claim of lien upon funds to the extent of the claim.

N.C. Gen. Stat. § 44A-18(2). Section 44A-23(b) provides, in relevant part, that a "second or third tier contractor, who gives notice of claim of lien upon funds as provided in this Article, may, to the extent of his claim, enforce the claim of lien on real property of the contractor created by Part 1 of Article 2." N.C. Gen. Stat. § 44A-23(b).

Pursuant to § 44A-18(6), a subcontractor's lien on funds "is perfected upon the giving of notice of claim of lien upon funds in writing to the obligor as provided in G.S. 44A-19 and shall be effective upon the obligor's receipt of the notice." N.C. Gen. Stat. § 44A-18(6). The subcontractor's subrogation liens are perfected in accordance with the requirements of § 44A-23. N.C. Gen. Stat. § 44A-18(6).[2] Pursuant to § 44A-19(d), "[n]otices of claims of lien upon funds under this section

---

[2] Section 44A-18(6) provides in full:
(6) A lien upon funds granted under this section is perfected upon the giving of notice

6

shall be served upon the obligor by personal delivery or in any manner authorized by Rule 4 of the North Carolina Rules of Civil Procedure. A copy of the notice of claim of lien upon funds shall be attached to any claim of lien on real property filed pursuant to G.S. 44A-20(d) or G.S. 44A-23."

Unlike a lien on real property, which, based on the effective date provision of § 44A-10, has priority over claims against the real estate filed after the date on which labor or materials were first furnished, a subcontractor's lien on funds has priority ahead of all other interests whenever created. Section 44A-22 provides that properly perfected liens upon funds

> have priority over all other interests or claims theretofore or thereafter created or suffered in the funds by the person against whose interest the lien upon funds is asserted, including, but not limited to, liens arising from garnishment, attachment, levy, judgment, assignments, security interests, and any other type of transfer, whether voluntary or involuntary.

N.C. Gen. Stat. § 44A-22.

If insufficient funds are available to satisfy all subcontractors that have asserted claims against the funds owed the contractor, the claimants, pursuant to § 44A-21, receive payment pro rata.

> (a) Where the obligor is a contractor or subcontractor and the funds in the hands of the obligor and the obligor's personal liability, if any, under G.S. 44A-20 are less than the amount of valid liens upon funds that have been received by the obligor under this Article, the parties entitled to liens upon funds shall share the funds on a pro rata basis.
> (b) Where the obligor is an owner and the funds in the hands of the obligor and the obligor's personal liability, if any, under G.S. 44A-20 are less than the sum of the amount of valid claims of liens upon funds that have been received by the obligor under this Article and the amount of the valid claims of liens on the real property upon the owner's property filed by the subcontractors with the clerk of superior court under G.S. 44A-23, the parties entitled to liens upon funds and the parties entitled

---

of claim of lien upon funds in writing to the obligor as provided in G.S. 44A-19 and shall be effective upon the obligor's receipt of the notice. The subrogation rights of a first, second, or third tier subcontractor to the claim of lien on real property of the contractor created by Part 1 of Article 2 of this Chapter are perfected as provided in G.S. 44A-23.

7

> to subrogation claims of liens on real property upon the owner's property shall share the funds on a pro rata basis.

N.C. Gen. Stat. § 44A-21.

North Carolina law gives a priority to subcontractors with properly perfected liens on funds, but subcontractors are not given an "interest" in the funds prior to time they give notice of their liens pursuant to §§ 44A-18(6) and 44A-19(d).  The North Carolina Supreme Court addressed the question of when the subcontractor's interest in funds arises in <u>Contract Steel Sales, Inc. v. Freedom Construction Co.</u>, 321 N.C. 215, 362 S.E.2d 547 (1987), and, interestingly, the debtor and all the subcontractors maintain that this case supports their respective positions.  In fact, all parties cite to the same language:

> The subcontractor must prove performance of his contract to enforce the lien, but he need not show such performance in order to assert his entitlement to a lien.  For this entitlement, he need only show that the materials were delivered to the site of the improvement.  Having made such a showing here, [the subcontractor] is entitled to its lien if it is properly perfected . . . .

<u>Contract Steel</u>, 321 N.C. at 220, 362 S.E.2d at 550-51.  The subcontractors focus on the idea that *entitlement* to a lien is created upon the delivery of the materials, and that the entitlement is the interest that is allowed to be perfected pursuant to § 362(b)(3).  The debtor, however, focuses on the holding that a subcontractor is entitled to a lien *if it is properly perfected*.

"Entitlement" to a lien is not the same as an interest in property.  The entitlement to claim a lien on funds due a contractor has no value until the subcontractor gives notice of the claim of lien.  Until notice is given, the obligor may pay sums directly to the contractor, and if that is done, there are no funds available to which a lien may attach.  On any given day, there may or may not be any funds owed to the contractor on which the subcontractor could claim a lien. The lien on funds is empty, imprecise, indeterminate and illusive, and, in essence, it does not exist until notice is served

on the obligor pursuant to § 44A-19(d).  Until that time, the obligor is free to ignore a subcontractor's "entitlement" to the funds.

Put another way, a subcontractor's lien on funds is much like a tax lien on personal property, and like a tax lien on personal property, there is no prior interest in property established for a claim of lien on funds to perfect.  Maryland Glass, 723 F.2d at 1144 n.14 (discussing In re New England Carpet Co., 26 B.R. 934 (Bankr. D. Vt. 1983), and Geiger v. City of Southfield (In re Continental Credit Corp.), 1 B.R. 680 (Bankr. N.D. Ill. 1979), and distinguishing real property liens from personal property liens).  The postpetition creation of the statutory lien is not the "perfection" of a pre-existing interest, but the creation of an interest for the first time, Maryland Glass, 723 F.2d at 1144 n.14 (discussing New England Carpet Co., 26 B.R. 934).  Accordingly, filing postpetition notices of liens on funds due to a contractor does not fall within the exception to the automatic stay provided by § 362(b)(3).  For that reason, the subcontractors who served claims of lien on funds postpetition violated the automatic stay in doing so.

There undoubtedly are strong policy arguments on both sides of this issue. The subcontractors are correct that the mechanic's lien, which is mentioned in North Carolina's Constitution, "has long been recognized as a fundamental tenet of North Carolina law." Ferguson Brief at 4.  The subcontractors also predict that if this court concludes that giving a postpetition notice of a claim of lien on funds violates the automatic stay, it will create havoc in the construction industry.  According to the subcontractors, their future efforts to avoid the consequences of a contractor's bankruptcy will require them to give notices of liens upon delivery of materials, rather than waiting to see if they get paid.  The subcontractors warn that once liens are filed, the flow of construction funds will stop.  Further, the subcontractors maintain, any subcontractor who has

9

advance notice that a contractor is having financial difficulties may be able to perfect its liens prepetition and gain an unfair advantage over those subcontractors who did not have the benefit of inside information, and did not file notice of their liens prior to the contractor's bankruptcy.

From the bankruptcy perspective, disallowing the postpetition liens furthers an important guiding principle for all bankruptcy courts, which was recently emphasized by the United States Supreme Court in Howard Delivery Serv., Inc. v. Zurich American Ins. Co., 547 U.S. 651, 126 S. Ct. 2105 (2006). The Court stated that "the Bankruptcy Code aims, in the main, to secure equal distribution among creditors," 126 S. Ct. at 2109, and "any doubt concerning the appropriate characterization [of a claim] . . . is best resolved in accord with the Bankruptcy Code's equal distribution aim." 126 S. Ct. at 2116.

In the final analysis, however, these persuasive policy arguments cannot alter the construction of the relevant statutes.

Having determined that the exception to the automatic stay in § 362(b)(3) does not apply to the giving of notice of the claim of a subcontractor's lien on funds owed to a contractor who is a debtor in bankruptcy, the court must determine whether a subcontractor may nonetheless file, pursuant to its subrogation rights, a lien on real property. Section 44A-23(a) provides, in relevant part, that a "first tier subcontractor, *who gives notice of claim of lien upon funds* as provided in this Article, may, to the extent of this claim, enforce the claim of lien on real property of the contractor created by Part 1 of this Article." N.C. Gen. Stat. § 44A-23(a) (emphasis added). Section 44A-23(b) provides, in relevant part, that a "second or third tier subcontractor, *who gives notice of claim of lien upon funds* as provided in this Article, may, to the extent of his claim, enforce the claim of lien on real property of the contractor created by Part 1 of Article 2" N.C. Gen. Stat. § 44A-23(b)

10

(emphasis added). Pursuant to § 44A-19(d), "[a] copy of the notice of claim of lien upon funds shall be attached to any claim of lien on real property filed pursuant to G.S. 44A-20(d) or G.S. 44A-23." The language of the statute is clear that in order to enforce the contractor's lien rights on the real property, the subcontractor must first have given notice of its claim of lien on funds. See also Cameron & Barkley Co. v. American Ins. Co., 112 N.C. App. 36, 45, 434 S.E.2d 632, 637 (1993) (trial court correctly held that it was necessary for subcontractor to give notice in accordance with the form specified in § 44A-19 for a claim of lien affecting title to real estate); Mace v. Bryant Constr. Co., 48 N.C. App. 297, 307, 269 S.E.2d 191, 196 (1980) ("the existence of a lien upon the realty granted by G.S. 44A-20(d) is dependent upon the existence of a valid lien upon funds").

Claims of liens on funds served in violation of the automatic stay are void, and because the subcontractors have not given valid notices of claims of lien on funds, they cannot file claims of lien on real property. Accordingly, the postpetition claims of lien on real property filed by the subcontractors are invalid and cannot be enforced. Because the liens on real property are unenforceable, the subcontractors' requests to enforce these liens are **DENIED**.

The debtor maintains that these stay violations were willful and that sanctions should be imposed pursuant to § 362(k). The court disagrees. The subcontractors were doing what subcontractors in North Carolina have been doing for years. Their actions in filing postpetition liens on funds owed to the debtor and asserting by subrogation Harrelson's lien rights in real property are consistent with their reasonable understanding of the law. In fact, earlier in the case, the debtor and the subcontractors, based on that understanding, were negotiating a consent order that would have permitted a recognition of the subcontractors' liens.

The issue of whether the postpetition claims of lien violated the automatic stay came to light because of a decision in the case of In re Shearin Family Investments, LLC, Case No. 08-07082-8-JRL, 2009 WL 1076818 (Bankr. E.D.N.C. April 17, 2009). In that opinion the court observed that the "text of the statute [§ 44A-18(1) and (6)] suggests that no lien [on funds] arises until it is perfected by giving written notice and made effective by receipt." Shearin, at *2. The court in Shearin held, as the court in this case now holds, that a subcontractor's interest or lien on funds owed to the contractor is not effective and is therefore not created until the notice has been given to the obligor, and that the exception to the automatic stay of § 362(b)(3) does not authorize subcontractors to give notice of their liens on funds owed to the contractor after the contractor has filed for bankruptcy relief.

The debtor argues that at a minimum those subcontractors who filed their liens after learning of the opinion in Shearin should be sanctioned. Although the holding in Shearin is clear enough, it is not directly applicable to the facts of this case.[3]  Because the lien claimants had a reasonable belief that they were not violating the automatic stay, sanctions will not be imposed. Accordingly, the debtor's request for sanctions is **DENIED.**  However, the claims of lien that appear on the public

---

[3]The facts in Shearin are much different than those before the court in this case. Shearin was the landowner/developer, not a contractor like Harrelson. It can be argued that, in that case, § 362(a)(4) did not stay the subcontractors from filing claims against funds owed to their contractor because the contractor was not in bankruptcy and was not protected by the stay. The funds owed to the contractor by Shearin were not property of the debtor's bankruptcy estate; rather, they were an obligation of the estate. An argument could also be raised that the subcontractors were stayed by § 362(a)(4) from filing lien notices against funds due to their contractor, because the notices were merely part of their main objective, which was to file liens against the debtor's real property. The question of whether § 362(a)(4) precludes subcontractors from filing their lien notices against funds was not raised in Shearin, and the suggested arguments were not made. In any event, that issue is not present in this case because, clearly, the funds owed to Harrelson are property of the debtor's estate and subcontractors are stayed by § 362(a)(4) from asserting their liens against them.

record must be withdrawn by the subcontractors. Furthermore, this opinion is without prejudice to any claim the debtor may have based on the giving of notice with respect to the wrong property.

In conclusion, § 362(b)(3) does not except from the automatic stay of § 362(a)(4) the giving of notice by subcontractors to perfect mechanics and materialmen's liens on funds due to a debtor who is their contractor. The subcontractors violated the automatic stay by giving lien notices on funds owed to the debtor. Those lien notices are invalid and must be removed from the record. The notices of lien by subrogation on real property are also invalid and shall be removed by the subcontractors. Sanctions for violating the automatic stay will not be imposed, and the motions of the subcontractors for relief from the automatic stay are **DENIED**.

**SO ORDERED**.

**END OF DOCUMENT**